Ray E. VINTILLA, et al., Plaintiffs,

v.

The UNITED STATES STEEL CORPO-
RATION PLAN FOR EMPLOYEE
PENSION BENEFITS, Defendant.

Civ. A. No. 83–1034.

United States District Court,
W.D. Pennsylvania.

April 18, 1985.

Francis X. Cook, John R. Vintilla, Cleveland, Ohio, Gerard F. Wrabley, Pittsburgh, Pa., for plaintiffs.

James P. Carney, Patrick Ritchey, Reed Smith Shaw & McClay, Pittsburgh, Pa., for defendant.

## OPINION

WEBER, District Judge.

Plaintiffs have brought an action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* to recover pension benefits they claim defendant is wrongfully withholding. Defendant[1] admits withholding the full amounts in question, but responds that ERISA does not prohibit its actions. Both sides have moved for summary judgment. At the outset, we find this case well-suited for summary judgment. The parties have agreed to the relevant facts by stipulation, which presents us with one question: whether defendant's refusal to pay these pension

---

1. Plaintiffs originally filed their complaint in the United States District Court for the Northern District of Ohio. The complaint named both the present defendant and United States Steel Corporation as defendants. In an opinion filed May 4, 1983, Judge Krenzler dismissed U.S. Steel Corporation from the suit and transferred it to this court.

benefits constitutes a "forfeiture" in violation of ERISA.

## I. FACTS.

Plaintiffs are 25 former management employees of U.S. Steel Corporation who worked for various lengths of time in the company's Venezuelan mining subsidiary, Orinoco Mining Company ("Orinoco"). The evidence indicates that those employees received salaries and benefits similar to those of their counterparts in other foreign counties and the United States. In addition, according to Venezuelan law, all workers in Venezuela are entitled to certain benefits in excess of what might be considered typical compensation in the United States. Two such benefits are payments for "cesantia" and "antiguedades." Roughly translated, the terms mean "unemployment aid" and "payment for years of service," respectively (referred to collectively as "severance benefits"). These severance benefits consisted of a month's salary multiplied by total years of service, paid in lump sum to all employees upon separation from the company. See Defendant's Appendix to Motion for Summary Judgment, Exhibit F. U.S. Steel Corporation was the sole contributor to the trust from which payments were drawn. The company ultimately paid about $4,000,000 in severance benefits to its Orinoco employees pursuant to Venezuelan law. Several plaintiffs received lump sum payments of more than $200,000. See Plaintiffs' Appendix to Motion for Summary Judgment at 17 and 20.

In 1974, Venezuela took steps to nationalize Orinoco Mining Company. U.S. Steel agreed to provide technical assistance to the new state-owned company during the transition. Following this transition, U.S. Steel would have no part in ownership or management of the new company. Anticipating the resulting transfer or retirement of all employees in Venezuela, U.S. Steel offered them a plan providing for various options in receiving severance benefits. *See id.* at 21–24. The choice of lump sum payments—the choice made by plaintiffs—

triggered a provision in the company's pension plan that lies at the heart of this dispute. Section 3.9(a) of the plan provided that severance benefits would be deducted, or set off, from the non-contributory pension U.S. Steel employees normally would receive. Some plaintiffs who · received large severance payments complain that defendant's recovery by setoff will preclude them from collecting any non-contributory benefits until the mid-1990's.

The parties do not dispute the existence or the effect of the pension plan provision authorizing defendant to set off severance benefits against pension payments. Copies of the 1976 and 1977 U.S. Steel pension plan filed with the court both provide in section 3.9(a) that:

> If any participant is or shall become entitled to or shall be paid any discharge, liquidation or dismissal or severance allowance or payment of similar kind ... under any policy of any of the Employing Companies ... or by reason of any law, then the total amount of such severance allowance paid or payable to him shall be deducted from or charged against the amount determined in accordance with paragraphs 3.3(b), (c) and (d) and paragraphs 3.4 and 3.5 [these paragraphs contain the Plan's formula for calculating the amount of pension payments.]

The parties have stipulated that section 3.9(a) applied at all relevant times and that "plaintiffs were aware that any pension ultimately received from the Plan would be calculated including a deduction for any *antiguedades* and *cesantia* received from [Orinoco] in accordance with the published policies of [Orinoco] and the Non-Contributory Pension Rules of the Plan." Stipulation, paragraphs 10 and 12. The remaining question is whether this deduction is permissible under ERISA.

## II. THE SUPREME COURT'S CONSTRUCTION OF 29 U.S.C. § 1053.

Plaintiffs bring their action under 29 U.S.C. § 1132(a) which authorizes civil en-

forcement of claims for pension benefits.[2] They contend that defendant's refusal to pay their vested benefits constitutes a forfeiture in violation of 29 U.S.C. § 1053. Section 1053 states simply that "Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age."[3]

The United States Supreme Court faced this issue in *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), which we have no doubt controls our decision in this case. The chief difference between *Alessi* and the case at bar is the type of income set off against pension benefits. In *Alessi*, the set off involved workers' compensation. We must determine by the same analysis whether ERISA prohibits this setoff which stems from Venezuelan labor law.

The plaintiffs in *Alessi* were retired employees who had obtained workers' compensation awards. The administrators of their pension plan reduced their retirement benefits by the amount of this compensation. The retirees argued that they were being denied vested benefits in violation of 29 U.S.C. § 1053. In defining the issue at stake, the Court made a fundamental distinction which we believe controls the case at bar. Section 1053 unmistakably protects an employee's right to his vested pension benefits. On the other hand, ERISA exerts little control over the content of the benefits themselves. The parties to the pension plan are responsible for deciding the actual benefits available under the plan. As the Court stated in *Alessi:*

> The statutory definition of "nonforfeitable" assures that an employee's claim to the protected benefit is legally enforceable, but it does not guarantee a particular amount or a method for calculating the benefit. As we explained last Term, "it is the claim to the benefit, rather than the benefit itself, that must be 'unconditional' and 'legally enforceable against the plan.'"

451 U.S. at 512, 101 S.Ct. at 1900 (quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 372–73, 100 S.Ct. 1723, 1731–32, 64 L.Ed.2d 354 (1980)). The Court thus held that it is permissible under ERISA for a pension plan to set off workers' compensation against expected retirement benefits. In so doing, the Court established that section 1053 is not a sweeping assurance against all setoffs to pension benefits.

## III. PERMISSIBILITY OF INTEGRATION.

■ The general practice of setoffs against pension payments is known as "integration", "a calculation practice under which benefit levels are determined by combining pension funds with other income streams available to the retired employee." *Alessi*, 451 U.S. at 514, 101 S.Ct. at 1901. Integration is a method of stretching pension funds while insuring that a recipient's overall income is not reduced. Individual employees' retirement income will be less when integration is applied, as plaintiffs here object. The group of pension recipi-

2. Section 1132(a) states that "A civil action may be brought—(1) by a participant or beneficiary —... (B) to recover benefits due to him under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

3. ERISA's definitional section, 29 U.S.C. § 1002(19) provides that:
The term "nonforfeitable" when used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan. For purposes of this paragraph, a right to an accrued benefit derived from employer contributions shall not be treated as forfeitable merely because the plan contains a provision described in section 1053(a)(3) of this title.
Section 1053(a)(3)(A) through (D) expressly permits four types of setoffs. It is not a forfeiture when setoffs: (1) are contingent upon the employee's death; (2) occur when the employee accepts the job under certain circumstances; (3) are due to some retroactive amendments to a pension plan; or (4) result from withdrawals of benefits obtained through mandatory contributions. None of these exceptions applies here.

ents under the plan, however, gains an advantage: the more outside income available to plan beneficiaries, the more pension money may be saved by setoff, within limits. This savings would permit the fund to pay a higher average pension.

The Treasury and Congress have consistently upheld integration. The Internal Revenue Service issued Revenue Rulings prior to enactment of ERISA approving setoff of worker's compensation against pension payments. *See, e.g.* Rev.Rul. 69–421, 1969–2 C.B. 72; Rev.Rul. 68–243, 1968–1 C.B. 157. In addition, the Treasury promulgated a regulation that interprets 26 U.S.C. § 411, the Internal Revenue Code's parallel to 29 U.S.C. § 1053(a), ERISA's nonforfeiture provision. The regulation endorses integration in stating that:

> [N]onforfeitable rights are not considered to be forfeitable by reason of the fact that they may be reduced to take into account benefits which are provided under the Social Security Act or under any other Federal or State law and which are taken into account in determining plan benefits.

26 C.F.R. § 1.411(a)–4(a) (1983). Furthermore, in enacting ERISA, Congress considered, but did not prohibit, integration. On the contrary, Congress expressly permitted integration of social security and railroad retirement benefits. 29 U.S.C. §§ 1054(b)(1)(B)(iv), 1054(b)(1)(C), and 1054(b)(1)(G); 42 U.S.C. § 401 *et seq.* and 45 U.S.C. § 231 *et seq.* Finally, we are also bound by the rulings made by the Supreme Court in *Alessi*, which considered all the evidence above.

■ Plaintiffs argue that the claim made in *Alessi* is distinguishable from theirs because their non-contributory pension payments are being withheld entirely. In *Alessi* the setoff amounted to only a portion of the retirees' benefit payments; the retirees simply received a reduced amount. Plaintiffs assert that when a setoff is entire, rather than partial, it is transformed into a forfeiture. This argument carries little weight. The amount of setoff is merely a function of the amount to be

recouped and the length of time necessary to recoup, both of which will vary from case to case. These facts have little bearing on the legal issue of permissible setoffs under ERISA.

■ We hold that the Plan did not violate ERISA in setting off plaintiffs' severance benefits against their non-contributory pension payments. Under *Alessi*, we must reject plaintiffs' only argument of substance, that this setoff is a forfeiture under 1053(a). The *Alessi* holding itself leads us to conclude that section 1053(a) does not operate as a general bar to setoffs. Furthermore, we believe that policy reasons expressed by the court in *Alessi*, as well as those brought into play under the facts of our case, justify defendant's actions.

First, as described above, the group of beneficiaries under plaintiffs' pension plan benefits from any savings in fund outlays. Integration is a practical method of extending fund resources while maintaining a consistent or increasing level of payments among recipients. Second, we must acknowledge that U.S. Steel was the sole contributor to both the pension fund and the fund from which severance payments were drawn. In this setoff of severance payments, we thus find an example of an employer regulating access to retirement benefits using a formula recognized by both parties—section 3.9(a) of the pension plan.

■ As the *Alessi* opinion makes clear, Congress did not expressly restrict all setoffs of pension benefits under ERISA. 451 U.S. at 511–12, 101 S.Ct. at 1900–01. Instead, the Court recognized that Congress gave parties to pension plans wide latitude in choosing the content of their retirement benefits. An option to these plans might be setoff of other income. From plaintiffs' perspective, they are losing benefits which have already been calculated and are now due. They overlook the fact, however, that deduction of their severance benefits is itself part of the formula for determining the amount of their pension payments.

That is, under the terms of the plan, the amount of pension to which plaintiffs are entitled is not fixed until the setoff is made.

This case appears to fall within the scope of actions that an employer would take in defining the contents of a benefit plan, on which ERISA has little bearing. Plaintiffs argue that their severance benefits have nothing to do with their pension; the severance payments actually were compensation for the hardships of working in Venezuela. We do not question the difficulties of working in foreign countries. This argument is contradicted, however, by plaintiffs' stipulation that they knew their severance benefits would be deducted from their pension payments. Stipulation at 4. The setoff was not capricious. It is easily seen as part of the internal design of the plan itself. Ultimately, we find it persuasive that the employer made all the contributions to both the pension trust and the trust for severance benefits. We consider this adjustment between strictly employer-funded benefits less infringing than that of a pension fund setting off unrelated outside income such as social security benefits or worker's compensation.

Having decided that defendant's actions are not outside the law, we are also satisfied that the setoff formula is intended to protect legitimate interests. In this case of a multinational corporation, integration is necessary to insure fairness to all employees in the administration of pension funds, few of whom receive such generous protection from foreign labor laws. Integration also helps control the cost of pension plans. We recognize that its application has limits. Nevertheless, it is a useful tool for encouraging private plans, making them more widely available, and for stabilizing or improving present plans.

CONCLUSION

We have little direct guidance for determining the permissibility of setoffs under ERISA. But plaintiff's suit relies solely on § 1053, which itself is ambiguous as a basis for their cause of action. When we combine congressional and administrative understanding of setoffs with the Supreme Court's construction of section 1053 in the critical *Alessi* opinion, we find that ERISA does not prohibit this setoff. We will issue an order consistent with the foregoing opinion.