**Earl BONOVICH, John Porter, Dean Robertson, Mario Marino, Ernie Shelton, Anthony Lenore, and Thomas Currier, individually, and on behalf of all others similarly situated, Plaintiffs,**

v.

**KNIGHTS OF COLUMBUS, and Supreme Knight of the Knights of Columbus, including Virgil Dechant, Knights of Columbus Agents' Pension Plan, and Plan Administrators, including W. Patrick, Donlin, and the Union Trust Company, Trustee, Defendants.**

Civil No. 3:93cv2077 (JBA).

United States District Court,
D. Connecticut.

March 21, 1997.

A. Paul Spinella, David K. Jaffe, Spinella & Jaffe, Hartford, CT, Gina Fietsam, Robert A. Holstein, Jewel N. Klein, Aron D. Robinson, Holstein, Mack & Klein, Chicago, IL, for Earl Bonovich.

Gina Fietsam, Holstein, Mack & Klein, Chicago, IL, for John Gilmour Porter, Dean Robertson, Mario Marino, Ernie Shelton, Anthony Lenore.

Gina Fietsam, Holstein, Mack & Klein, Chicago, IL, for Thomas Currier.

John F. Conway, Penny Q. Seaman, Mark Richard Kravitz, Wiggin & Dana, New Haven, CT, Phillip J. Harvey, Shaw, Pittman, Potts & Trowbridge, Washington, DC, for Knights of Columbus, Virgil Dechant, W. Patrick Donlin, Knights of Columbus Agents Pension Plan, Plan Administrators.

David R. Schaefer, Brian P. Daniels, Brenner, Saltzman & Wallman, New Haven, John F. Conway, Penny Q. Seaman, Mark Richard Kravitz, Wiggin & Dana, New Haven, Philip J. Harvey, Shaw, Pittman, Potts & Trowbridge, Washington, DC, Anthony J. Oliva, Allen Matkins Leck Gamble & Mallory, Los Angeles, CA, for Union Trust Co.

John F. Conway, Penny Q. Seaman, Wiggin & Dana, New Haven, CT, for Ellis Flinn, Charles Riesbeck, Jr.

John F. Conway, Wiggin & Dana, New Haven, CT, for William J. Van Tassell, Edward J. Maloney.

## RULING ON DEFENDANTS' MOTION TO DISMISS [DOC. 41]

### I. INTRODUCTION

ARTERTON, District Judge.

Knights of Columbus "field agents" received annual commission renewals if the insurance policies they sold were renewed through the first five years of the life of the policy, regardless of whether the agent was still working for the Knights, or whether the agent was alive or deceased, provided the renewals themselves had vested. (Am. Compl.¶ 61). The Knights of Columbus Agents' Pension Plan ("Plan") is a noncontributory pension plan mandating that participants "are not required or permitted to make any contributions to the Plan," (Am. Compl., Ex. K at 19). Further, the Benefit Formula used to calculate Plan benefits reduces, or off-sets, those benefits by "any first year or renewal commission payable under an Agent's contract dated January 1, 1969 or later." (Am. Compl., Ex. K at 20).

This motion to dismiss raises the issue of whether a pension plan provider may integrate Insurance agents' pre-retirement renewal commissions into its pension plan for benefit calculation purposes, or whether such an off-set is an impermissible forfeiture under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. After a close examination of the pension plan provisions, ERISA's nonforfeiture provision, and the reasoning of *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) and its progeny, the Court concludes that such integration is permissible under ERISA on the facts of this

case, and defendant's motion to dismiss is therefore granted.

Plaintiffs, seven former field agents of the Knights, bring this action alleging ERISA violations, as well as state common law and statutory causes of action. Defendants are the Knights, selected "Supreme Officers" of the Knights, the Knights of Columbus Agents Pension Plan, plan administrators, and Union Trust Co. The action was brought by the agents, individually and on behalf of three classes of plaintiffs, "employee agents" (former or current field or general agents of the Knights), "certificate holders" (insured members of the Knights, insured members' wives, insured members' minors), and "vested agents" (former or current vested employee agents of the Knights) Defendants move to dismiss Vested Agents' Count One, the only federal jurisdiction conferring claim, for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6) and also move to dismiss all state law claims urging the Court not to exercise its supplemental jurisdiction. *See* 28 U.S.C. § 1367.

In deciding a motion to dismiss, a court must construe in plaintiffs' favor any well-pleaded factual allegations in the complaint. *Finnegan v. Campeau Corp.,* 915 F.2d 824, 826 (2d Cir.1990). Further, "[i]n determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). Additionally, a court may dismiss the complaint only where it appears beyond doubt that plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

## II. ANALYSIS

### A. BENEFIT CALCULATION

In essence, plaintiffs allege that although the language of the Plan, and the Plan's supporting materials, state that the Plan is non-contributory, the commission re-newal offset violates ERISA because that offset diminishes plaintiffs' pension benefits, which is tantamount to plaintiffs paying into their supposed noncontributory pensions, and thus forfeiting benefits which should have accrued to them. Defendant, however, asserts that plaintiffs' claim is foreclosed by *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) and its progeny. The Court agrees.

A full analysis of plaintiffs' claim begins with Section 203(a) of ERISA, the "nonforfeitability provision," which requires that:

> Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age....

29 U.S.C. § 1053(a). The statute expressly exempts from its forfeiture ban offsets that (1) are contingent on the employee's death; (2) occur when the employee takes a job under certain circumstances; (3) are due to certain retroactive amendments to a pension plan; or result from withdrawals of benefits derived from mandatory contributions. 29 U.S.C. §§ 1053(a)(3)(A)–(D).

"The legislative history indicates that with these limited exceptions, vested employee rights cannot be forfeited for any reason." *Hummell v. S.E. Rykoff,* 634 F.2d 446, 449 (9th Cir.1980). See Conference Rep. No. 93–1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 4639, 5052 ("Under the conference substitute, except as outlined below [express exemptions in statute], an employee's rights to benefits attributable to his own contributions may never be forfeited"); Senate Rep. No. 93–127, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 4934 ("With the limited exceptions noted above, [express exemptions in statute] no rights, once they are required to be vested, may be lost by the employee under any circumstances...."); House Rep. No. 93–807, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 4725–26 (same).

In *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 511, 101 S.Ct. 1895, 1900, 68 L.Ed.2d 402 (1981), the Supreme Court held that off-setting pension benefits with workers' compensation payments did not violate

ERISA's nonforfeiture provision. While the Supreme Court noted that § 1053(a) prohibits forfeitures of vested rights except as expressly provided in § 1053(a)(3), and that the challenged workers' compensation off-sets were not among those permitted in that section, the Supreme Court distinguished between the right to claim a vested benefit, protected by ERISA's nonforfeiture provision, and the calculation of the benefit, which ERISA leaves largely to the private entity creating the plan. 451 U.S. at 511, 101 S.Ct. at 1900.

ERISA defines nonforfeitable, with respect to a pension benefit or right, as "a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan." 29 U.S.C. § 1002(19). Construing this definition, the Supreme Court held:

> "[T]he term 'forfeiture' normally connotes a total loss in consequence of some event rather than a limit on the value of a person's rights. Each of the examples of a plan provision that is expressly described as not causing a forfeiture listed in [§ 1053(a)(3) ] describes an event—such as death or temporary re-employment—that might otherwise be construed as causing a forfeiture of the entire benefit. It is therefore surely consistent with the statutory definition of 'nonforfeitable' to view it as describing the quality of the participant's right to a pension rather than a limit on the amount he may collect."

451 U.S. at 512, 101 S.Ct. at 1900 (citing *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 372–73, 100 S.Ct. 1723, 1731–32, 64 L.Ed.2d 354 (1980)).

■ In short, the statutory definition of "nonforfeitable" assures that an employee's claim to the protected benefit is legally enforceable, but it does not guarantee a particular amount or a method for calculating the benefit. *Id.* Therefore, "it is the claim to the benefit, rather than the benefit itself, that must be 'unconditional' and 'legally enforceable against the plan.'" *Id.*

Thus, because ERISA does not guarantee a participant a particular benefit amount or calculation, as these determinations are made by the private plan provider, the Supreme Court in *Alessi* recognized that Congress did not prohibit integration, "a calculation practice under which benefit levels are determined by combining pension funds with other income streams available to the retired employees." *Id.* at 514, 101 S.Ct. at 1901. Integration is a method of stretching pension funds while insuring that a recipient's overall income is not reduced. *Vintilla v. United States Steel Corp.*, 606 F.Supp. 640, 642 (W.D.Pa.1985). Although individual employees' overall retirement income will be less when integration is applied, the group of pension recipients under a plan gains an advantage because the more outside income available to plan beneficiaries, the more pension money may be saved by set-off, allowing the fund to pay a higher average pension. *Id.* at 643. The same congressional purpose—promoting a system of private pensions by giving employers avenues for cutting the cost of their pension obligations—underlies all such offset possibilities. *Alessi*, 451 U.S. at 517, 101 S.Ct. at 1903.

Although the *Alessi* court concluded that the reduction of pension benefits via integration is not per se prohibited by § 1053(a)(3) since the level of pension benefits is not prescribed by ERISA. *Id.* at 518, 101 S.Ct. at 1903–04, it noted an argument could be advanced that Congress' express approval of integrating pension funds with Social Security and Railroad Retirement payments disallows, by omission, any other type of integration. *Id.* at 517, 101 S.Ct. at 1903. Developing that argument, the *Alessi* retirees claimed that workers' compensation awards are so different in kind from Social Security and Railroad Retirement payments that their integration could not be authorized under the same rubric, and that because of this distinction, integration of pension funds with workers' compensation awards lacked the rationale behind the integration of pension funds with Social Security and Railroad Retirement payments. Disagreeing, the Supreme Court concluded that:

> Retirees' claim presumes that ERISA permits integration with Social Security or

Railroad Retirement only where there is an identity between the purposes of pension payments and the purposes of the other integrated benefits. But not even the funds that the Congress clearly has approved for integration share the identity of purpose ascribed to them by petitioners. Both the Social Security and Railroad Retirement Acts provide payments for disability as well as for wages lost due to retirement, and ERISA permits pension integration without distinguishing these different kinds of benefits.

*Id.* at 519, 101 S.Ct. at 1904. In short, an offset does not violate ERISA merely because there is no identity of purpose between the pension payments and the purposes of the other integrated benefits.

In deciding that Congress did not intend to limit integration to Social Security and Railroad Retirement payments, the Supreme Court also looked to an IRS ruling permitting integration with other benefits provided by federal or state law, including workers' compensation, and concluded that the IRS ruling was consistent with ERISA. The Supreme Court first reasoned that reduction of pension benefits based on integration is not prohibited by § 1053(a) since the amount and calculation of benefits is not governed by ERISA, and, second, that integration of workers compensation awards could be analyzed under the same framework as Social Security and Railroad Retirement payments. *Id.* at 518, 101 S.Ct. at 1903–04. The Supreme Court concluded that in enacting ERISA Congress knew of the IRS ruling and left it in effect, thus permitting integration along the lines already approved by the IRS. *Id.* at 519–520, 101 S.Ct. at 1904–05.

Consequently, because the calculation of pension benefits is controlled by private plan providers under ERISA, and integration is a form of benefit calculation, under both *Alessi* and ERISA's definition of "nonforfeitable," the Court concludes that, under the circumstances of this case, § 1053(a) does not bar integration of plaintiffs' renewal commissions with their pension benefits, where the Plan's benefit calculation provision notified participants in straightforward terms that their base level of retirement income would be off-

set by any renewal commissions continued to be owed to them. Further, the purpose of ERISA's nonforfeiture provision, to protect participants' right to enforce benefits claims, is not contravened by the integration calculation set forth in the pension plan created by the Knights. (Am.Compl., Ex. K).

Moreover, although the renewal commissions here differ from Social Security, Railroad Retirement and workers' compensation payments, they are less analogous to a stream of income and more akin to general benefit payments since the commission renewals were required to vest after five consecutive years of service with the Knights, and were received regardless of whether the agent continued to be employed with the Knights. (Am. Compl., Ex. B at ¶ 8(b)). The commission renewal off-set here is similar to the profit-sharing off-set which the Seventh Circuit concluded did not violate ERISA in *Pritchard v. Rainfair,* 945 F.2d 185 (7th Cir.1991). Under the integration scheme at issue in *Pritchard,* an eligible employee would receive a lump sum distribution under the profit-sharing plan first, and his or her monthly benefits under the discretionary plan would be delayed until such time as the employee "used up" the lump sum distribution, if ever. *Id.* at 187.

Addressing plaintiff's § 1053(a) claim that the integration violated ERISA, the Seventh Circuit noted that § 1053(a) provides no guarantee of the amount of the benefits to be received, or the method of calculating those benefits, this function being a matter of contract generally left to the parties. *Id.* at 189 (citing *Alessi,* 451 U.S. at 511–12, 101 S.Ct. at 1900–01). Further, in concluding that Rainfair's integration of the two pension plans did not violate § 1053(a), the court found no difference between the off-set in that case and those off-sets approved either expressly by ERISA or in *Alessi,* recognizing that Congress intended to promote a system of private pensions by giving employers avenues for cutting the cost of their pension obligations—which purpose was served by the Rainfair offset. *Id.* at 190.

In concluding that integration of profit-sharing benefits did not violate ERISA, the *Pritchard* court relied on the fact that bene-

fit calculation is left to private plan providers, and on the purposes of ERISA's nonforfeiture provision. The same factors analyzed in *Pritchard* underpin this Court's conclusion that the integration of plaintiffs' renewal commissions with their pension benefits, as set forth in the pension plan created by the Knights, is not barred by § 1053(a) of ERISA.

*Vintilla v. United States Steel Corp.*, decided subsequent to *Alessi*, also supports the Court's conclusion. In *Vintilla*, plaintiffs were 25 former management employees of U.S. Steel Corporation who worked for periods of time in the company's Venezuelan subsidiary, and who were entitled to certain severance benefits pursuant to Venezuelan law. Plaintiffs chose to receive those severance benefits in a lump sum, triggering a provision in the company's pension plan providing that the severance benefits would be deducted, or off-set, from the non-contributory pension U.S. Steel employees would normally receive. 606 F.Supp. at 641. Plaintiffs sued U.S. Steel, claiming that the set-off constituted a forfeiture in violation of § 1053(a) of ERISA. *Id.* at 642.

The *Vintilla* court began its analysis with *Alessi*, noting the Supreme Court established that § 1053 is not a sweeping bar against all set-offs to pension benefits, and that the fundamental distinction made in Alessi, between an employee's right to claim his or her vested pension benefits which is protected by § 1053, and the content of the benefits themselves which is left to the plan provider, controlled its analysis. *Id.* at 642. Additionally, at the outset, the court recognized the favorable policy behind integration, i.e., off-setting the outside income available to plan beneficiaries which permits the fund to pay a higher average pension. *Id.* at 643.

Holding that the plan did not violate ERISA in setting off plaintiffs' severance benefits against their non-contributory pension payments, the court recognized:

> Congress gave parties to pension plans wide latitude in choosing the content of their retirement benefits. An option to these plans might be set-off of other income. From plaintiffs' perspective, they are losing benefits which have already been calculated and are now due. They overlook the fact, however, that deduction of their severance benefits is itself part of the formula for determining the amount of their pension payments.

*Id.*

Here, as in *Vintilla*, plaintiffs overlook the fact that deduction of their benefit-like renewal commissions is itself part of the formula for determining the amount of their pension benefits, and because ERISA does not control the content and calculation method of plan benefits, the Knights may integrate participants' pension plan benefits with their renewal commissions. In short, the off-set of plaintiffs' renewal commissions does not change their right to enforce a benefits claim against the Plan, which is all that is afforded protection under ERISA's nonforfeiture provision.

## B. ESTOPPEL

■ Plaintiffs allege that defendants are equitably estopped from offsetting their pensions with plaintiffs' earned commission renewals because the language of the Plan indicated that it was "noncontributory." Further, plaintiffs contend that defendants are equitably estopped from failing to pay plaintiffs both their accrued benefit and their earned commission renewals because such payment was promised by the Vested Agents' contract and in defendants' brochure.

The Second Circuit has held that the principles of estoppel apply in ERISA cases only under extraordinary circumstances. *Schonholz v. Long Island Jewish Medical Center*, 87 F.3d 72, 78 (2d Cir.1996); *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir.1993). The elements of a promissory estoppel claim in an ERISA action are: (1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced. *Schonholz*, 87 F.3d at 79. Further, for purposes of ERISA, a plaintiff must demonstrate a promise that the defendant reasonably should have expected to induce action or forbearance on the plaintiff's part. *Id.*

In support of their estoppel claim, plaintiffs allege that they relied on the language of the Plan stating it was noncontributory. (Am. Compl., Ex. K at 19). However, the Plan clearly states that the Benefit Formula used to calculate Plan benefits reduces them by any renewal commissions to which the agent is entitled. (Am. Compl., Ex. K at 20). Despite the Plan's noncontributory nature, in light of the plain language of the Plan informing plaintiffs of the commission renewal off-set, the Court concludes that plaintiffs have failed to demonstrate the Plan language constitutes any promise which the defendants should have expected to induce any action or forbearance by plaintiffs.

Plaintiffs also claim that they relied upon additional information supplied to prospective agents regarding the purportedly noncontributory plan. (Am. Compl. at ¶ 215). Specifically, plaintiffs claim that a brochure distributed by the Knights entitled "Opportunity," (Am.Compl., Ex. A), stated that "the Knights of Columbus provides a non-contributory pension plan, which is second to none," and that the employment contract between the Knights and the agents refers to the vesting of commissions after a specific length of service and to the Knights' noncontributory pension plan. (Am. Compl., Ex. B at 8(b)).

However, a closer reading of paragraph 8(b) demonstrates that plaintiffs' first year and renewal commissions only vest "subject to those provisions of the Order's non-contributory Agent's Pension Plan which are designed to prevent duplicative payments of commissions and benefits." *Id.* Thus, the contract explicitly echoes the language of the Plan which provides, by its terms, for a commission renewal off-set to plaintiffs' Plan benefits. Moreover, the contract clearly informs plaintiffs of the off-set's purpose, i.e., to avoid duplication in payments of commission renewals and pension benefits.

In sum, notwithstanding plaintiffs' claim that defendants' use of the term "noncontributory" in various documents misrepresented either the existence or nature of the commission off-set, the Court finds that under no set of facts could the Plan, or the documents referenced by plaintiffs, be found to consti-

tute any promise by defendants that plaintiffs' pension benefits would not be off-set by their commission renewals. Rather, the Plan and documents clearly expressed both the existence of the off-set and the purpose therefore. Thereof, treating the factual allegations in the complaint as true, and construing them most favorably to plaintiffs, the Court concludes that plaintiffs have alleged no promise upon which they relied to their detriment that would allow them to proceed with their federal common law estoppel claims. *See Fahey v. Niagara Mohawk Power Corp.,* 1996 WL 363066 (N.D.N.Y. 1996) (court dismissed estoppel claim in ERISA case concluding plaintiffs' allegations regarding letter from chairman promising increased benefits under current package, and verbal assurances that any new benefits package would be retroactive, were insufficient to demonstrate the extraordinary circumstances necessary for survival of plaintiffs' estoppel claim).

## C. STATE LAW CLAIMS

■ Defendant urges that absent plaintiffs' ERISA claim, the Court should decline to exercise its supplemental jurisdiction over plaintiffs' remaining state law claims, pursuant to 28 U.S.C. § 1367(c)(3). Section 1367(c)(3) provides that:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) [conferring supplemental jurisdiction] if—

(3) the district court has dismissed all claims over which it has original jurisdiction,

In *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the Supreme Court noted that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." However, the District Court may exercise its discretion in deciding whether to dismiss the pendant state law claims. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988).

In addition to their ERISA claim, plaintiffs bring state law claims for breach of contract,

**150**

fraud, tortious interference, retaliatory discharge, outrage, breach of fiduciary duty, as well as CUTPA claims and a request for an accounting. However, none of plaintiffs' state law claims involves the Plan's provision for offsetting pension benefits with renewal commissions, the issue on which federal jurisdiction was predicated. Therefore, the Court concludes that, in the interest of comity, plaintiffs' numerous state law causes of action should be decided by a Connecticut state court applying and interpreting its own state law. Moreover, the Court has expended no judicial resources on plaintiffs' state claims while defendant's motion to dismiss predicated on the federal question was pending. The Court finds that considerations of judicial economy, convenience, fairness and comity weigh in favor of declining supplemental jurisdiction over plaintiffs' pendant state law claims. *See Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139; *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir.1994).

Accordingly, defendants' Motion to Dismiss [doc. 41] *is* GRANTED without prejudice to renew plaintiffs' state law claims in state court. The clerk is directed to close the case.

Dated this 21st day of March, 1997, at New Haven, Connecticut.

IT IS SO ORDERED.