Barbara LAUDER, Plaintiff,

v.

FIRST UNUM LIFE INSURANCE COMPANY and Coach Stores, Inc., Defendants.

No. 98 Civ. 3164(BDP).

United States District Court, S.D. New York.

July 2, 1999.

Peter G. Eikenberry, New York City, for plaintiff.

Evan L. Gordon, New York City, for defendant First Unum.

Stacey B. Creem, Rosenmann & Colin, LLP, New York City, for defendant Coach.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiff Barbara Lauder brings this action against the Defendants Coach Stores, Inc. ("Coach") and First Unum Life Insurance Company ("First Unum") under the Employee Retirement Insurance Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and the Consolidated Omnibus Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 et seq., for damages, declaratory and injunctive relief and attorneys' fees.

Coach moves for dismissal pursuant to Fed.R.Civ.P. 12(b) and summary judgment pursuant to Fed.R.Civ.P. 56. Lauder also moves for summary judgment on claims one and three pursuant to Rule 56. Since both sides presented matters outside the pleadings, and this Court has considered all papers submitted by the parties, this Court will treat Coach's motion solely as a motion for summary judgment. For the reasons stated below, Coach's motion for summary judgment is granted and Lauder's motion for summary judgment is denied.

## BACKGROUND

This suit revolves around a denial of disability benefits. Lauder is a former employee of Coach. First Unum is an insurance company that issued a group long term disability policy ("LTD policy") to Coach. On November 1, 1996 Lauder allegedly fell and struck her neck and from that date has had "increasing neck and back pain limiting her abilities." Lauder, claiming she is permanently disabled, submitted a claim for disability to First Unum in January 1998. This claim was denied by First Unum which contended that Lauder was no longer in the eligible class because the accident occurred after her last day of employment which First Unum contended was October 31, 1996. Because First Unum determined that Lauder was not within the eligible class, it never decided whether she would be considered disabled under the policy. Lauder seeks a declaration from this Court that she is within the eligible class as well as disabled under the LTD policy.

Lauder's employment with Coach was terminated by a written "Separation and Release" Agreement ("Release") executed November 15, 1996. According to the Release, Lauder's termination was effective November 1, 1996. The Release was negotiated by Lauder's attorney. Lauder discussed the Release with her attorney and understood the agreement. Under the Release, Lauder was to receive, *inter alia*, severance pay for two years, various bonus payments, and extended medical and dental benefits. In the Release, paragraph 4, Lauder discharged and released Coach from "all claims arising out of [her] employment with or separation from [Coach] ... such as (by way of example only) any claim for bonus, severance, or other benefits apart from the benefits stated herein." This paragraph also stated,

this release shall not apply to any deferred compensation, 401K pension or other ERISA Benefit Plan with respect to which Employee has a vested entitlement ... and ... the Employer acknowledges the Employee claims to have a back condition or injury for which she may be entitled to benefits under the Worker's Compensation or Disability Benefits Law and nothing contained in this agreement shall preclude the Employee from filing such claim.

The Release further stated in paragraph 5,

To the maximum extent permitted by law, [Lauder] covenants not to sue or

institute or cause to be instituted any action in federal, state, or local agency or court against ... [Coach], including but not limited to any of the claims released in paragraphs 3 and 4 of this Agreement.

The Release also stated that Lauder had read and understood the document and that she had signed the agreement "KNOWINGLY AND VOLUNTARILY."

On December 5, 1996 Lauder received a letter and separation booklet from Coach stating that her "last day worked" was November 1, 1996 and that she had LTD coverage until November 30, 1996. In addition it provided the number to call if she wished to convert the LTD coverage into her own name. Lauder claims this notice was untimely. In any event, Lauder did not attempt to convert the policy.

On January 12, 1998, Lauder applied for benefits under the LTD coverage by First Unum. On her "Employee's Statement" when asked for the "Last day worked before the disability," she answered "October 31, 1996." Lauder answered "November 1, 1996" for the "Date you were first unable to work." The "Employer's Statement" filled out by Coach's benefits manager, Karen Vining, stated that Lauder's last day worked was October 31, 1996. On February 6, 1998, Jennifer Tucci, a disability benefits specialist at First Unum, in the course of investigating the claim, called Lauder. Tucci's contemporaneous notes taken during this conversation indicate that Lauder stated that October 31, 1996 was her last day of work. On February 9, 1998, Tucci spoke to Vining and Vining indicated that if Lauder came to work November 1, 1996 it was only to pick up her separation agreement.

First Unum denied Lauder's request for disability benefits by letter February 10, 1998. On March 26, 1998 the ERISA appeal unit of First Unum upheld the deci-

sion to deny disability benefits. By letter dated April 24, 1998 Vining wrote to Tucci to appeal First Unum's denial of Lauder's benefits. Vining's letter stated that November 1, 1996 was Lauder's termination date and that it was Coach's policy to keep coverage active until the end of the month in which an employee terminates, and in this case it would be November 30, 1996. Apparently Coach's policy of extending coverage until the end of the month was not delineated in the First Unum policy.

Lauder now brings four claims against Coach and First Unum under ERISA and COBRA. Lauder's first claim is against First Unum under ERISA, 29 U.S.C. § 1132; her second claim is against First Unum under COBRA, 29 U.S.C. § 1166; her third claim is against Coach under ERISA, 29 U.S.C. § 1132; and her fourth claim is against Coach under COBRA, 29 U.S.C. §§ 1161, 1165, 1166. Coach now moves for dismissal and/or summary judgment on Lauder's third and fourth claims. Lauder moves for summary judgment on her first and third claims.[1]

## DISCUSSION

### 1. Summary Judgment Standard

A motion for summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hayes v. New York City Dep't. of Corrections,* 84 F.3d 614, 619 (2d Cir.1996); *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). The court is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only

1. Lauder, in her summary judgment papers asserts an ERISA claim against Coach under §§ 1104, and 1021–1031 which is not alleged in her amended complaint and for which no

motion for leave to file an additional amended complaint has been made. Accordingly, this Court will not address these claims.

by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos*, 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Hayes*, 84 F.3d 614 at 619.

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities in the light most favorable to, and draw all reasonable inferences in favor of, the party opposing the motion. *Wernick v. Federal Reserve Bank of New York*, 91 F.3d 379, 382 (2d Cir.1996); *In re State Police Litigation*, 88 F.3d 111, 123 (2d Cir.1996). The Court must not weigh evidence or assess the credibility of potential witnesses, for such evaluations are to be conducted solely by the jury. *Hayes*, 84 F.3d at 619; *United States v. Rem*, 38 F.3d 634, 644 (2d Cir.1994); *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir.1994). A finding of disputed material facts that could reasonably be resolved in favor of either party precludes summary judgment. *Wernick*, 91 F.3d at 382 (quoting *Anderson v. Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. 2505, 91 L.Ed.2d 202).

Generally, the burden is on the moving party to demonstrate that there is no genuine dispute respecting any material fact and that he is entitled to judgment as a matter of law. *In re State Police Litigation*, 88 F.3d at 123; *Gallo v. Prudential Residential Services, Limited Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). To successfully oppose a motion for summary judgment, the responding party "must set forth facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A summary judgment motion cannot be defeated through mere speculation or conjecture. *Pollis v. New School for Social Research*, 829 F.Supp. 584, 586 (S.D.N.Y. 1993) (citing *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (other citations omitted)).

*2. Release*

■ Coach contends that Lauder's suit should be dismissed because of a valid Release. Lauder claims, however, that the Release does not bar her claims against Coach because the Release did not apply to "any deferred compensation, 401K, pension or other ERISA Benefit Plan with respect to which Employee has a vested entitlement." Coach claims that this language only applies to pension-type plans and not welfare-type plans because the Release separately deals with disability benefits and exempts from its scope only claims for benefits "under the Worker's Compensation or Disability Benefits Law." This Court deems this language of the Release not sufficiently clear and unambiguous on its face such that it is entitled to enforcement.

■ Coach further claims that Lauder had no vested entitlement to disability benefits. While it is well established that benefits provided by a welfare plan as opposed to pension plan benefits are generally not vested, and an employer can amend or terminate a plan providing such benefits at any time, an employer nevertheless may make an enforceable promise to provide vesting. *American Federation of Grain Millers, AFL—CIO v. Int'l Multifoods Corp.*, 116 F.3d 976, 979 (2d Cir. 1997) ("under ... ERISA, if an employer promises vested benefits, that promise will be enforced"). Further, "[n]othing in ERISA ... forbids or prevents an employer from agreeing to vest employee welfare benefits or from waiving its ability to terminate or amend unilaterally a plan." *Schonholz v. Long Island Jewish Medical Center*, 87 F.3d 72, 76 (2d Cir.1996).

■ Lauder claims she had a vested right to a thirty-day extension of LTD coverage based on the statements in Coach's separation booklet. The separation booklet stated in reference to LTD coverage:

When does my coverage terminate?

Your coverage will terminate at the end of the month following your last day worked.

An employer's intention to vest welfare benefits does not have to be through formal plan documents. *See Schonholz,* 87 F.3d at 76 (Court held that an employee had vested welfare benefits based on a memorandum and a letter sent to the employee). Coach's argument that it had no actual power to change the policy is not the proper inquiry at this junction. In any event, because the Court concludes that Coach was not a fiduciary under ERISA and COBRA does not cover LTD benefits, resolution of the scope of the Release is not required.

### 3. ERISA Claim Against Coach

Lauder claims Coach violated ERISA, 29 U.S.C. § 1132. To be liable under § 1132, Coach must be a fiduciary under the statute. *See, e.g., Geller v. County Line Auto Sales, Inc.,* 86 F.3d 18, 21 (2d Cir.1996). Whether Coach is a fiduciary of the LTD policy is governed by the text of 29 U.S.C. § 1002(21)(A) which defines "Fiduciary," in relevant part, as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Interpretative guidelines by the Department of Labor further delineate the responsibilities of a fiduciary, explaining that "persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures" and, therefore, perform "purely ministerial functions" are not fiduciaries. 29 C.F.R. § 2509.75–8. According to the regulations, the performance of ministerial functions includes, *inter alia,* the preparation of employee communication material, the orientation of new participants and advising participants of their rights and options under the plan, the maintenance of service and employment records, the calculation of benefits, and the processing of claims. *Id.* A person performing these functions

> is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so.

*Id.* Thus, fiduciary duty is only imposed on an employer when the employer maintains discretionary authority or control over the management of the plan or disposition of the assets.

 Further, an employer is not a fiduciary of a benefits plan simply because it creates, sponsors or contributes to a plan. *Trustees of Health and Welfare and Pension Funds of Four Joint Boards v. Schlesinger Brothers, Inc.,* 931 F.Supp. 204, 207 (S.D.N.Y.1996); *Independent Ass'n of Publishers Employees, Inc. v. Dow Jones & Co.,* Inc., 671 F.Supp. 1365, 1367 (S.D.N.Y.1987) ("An employer does not fall under [§ 1002(21)(A)] by merely creating and financing a plan, i.e., by being the 'plan sponsor.' "); *see also Siskind v. Sperry Retirement Program, Unisys,* 47 F.3d 498, 505 (2d Cir.1995). Here, Lauder has not adduced sufficient triable facts to establish that Coach was a fiduciary. Under the terms of the LTD policy, the authority to administer the policy is delegated to First Unum and there is no indication that Coach shared or reserved any of that authority. Although Lauder points to Coach's dissemination of a separation booklet as support, the law outlined

above makes clear that such activity does not make Coach a fiduciary. Accordingly, Lauder is denied summary judgment on her third claim against Coach and summary judgment is granted in favor of Coach.

*4. ERISA Claim Against First Unum*

Lauder's motion for summary judgment on her first claim against First Unum is denied. A disputed issue of material fact exists with respect to, *inter alia,* whether Lauder was employed November 1, 1996. *See* Fed.R.Civ.P.Rule 56(c); *Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 382 (2d Cir.1996).

*5. Cobra Claim Against Coach*

■ Lauder's fourth claim is against Coach for violation of COBRA, §§ 1161, 1165 and 1166 because Coach provided untimely and inaccurate notice relating to the continuation of coverage under the LTD policy. Coach claims that it is entitled to summary judgment on this claim because COBRA does not cover LTD insurance. This Court agrees.

COBRA requires the plan sponsor of a "group health plan [to] provide ... [that] each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled ... to elect, within the election period, continuation coverage under the plan." 29 U.S.C. section 1161(a). The purpose of this section is to provide employees who have been covered by an employment-related group health plan with the opportunity to elect group rate continuation of health care coverage. *See Local 217, Hotel & Restaurant Employees Union v. MHM, Inc.,* 976 F.2d 805, 809 (2d Cir.1992) (discussing COBRA purpose and requirements).

■ COBRA defines "group health plan" as "an employee welfare benefit plan providing medical care (as defined in sec-

tion 213(d) of Title 26) to participants or beneficiaries directly or through insurance, reimbursement, or otherwise." 29 U.S.C. § 1167(1). As defined in section 213(d):

'medical care' means amounts paid—

(A) for the diagnosis, cure, mitigation, treatment or Prevention of disease, or for the purpose of affecting any structure or function of the body,

(B) for transportation primarily for and essential to medical care referred to in subparagraph (A), or

(C) for insurance (including amounts paid as premiums under part B of title XVIII of the Social Security Act, relating to supplementary medical insurance for the aged) covering medical care referred to in subparagraphs (A) and (B).

29 U.S.C. § 1167. The definition of medical care does not include or reference disability benefits, thus, COBRA does not require sponsors of employee welfare benefit plans to offer continuation coverage for disability insurance. *Austell v. Raymond James & Associates, Inc.,* 120 F.3d 32, 33 (4th Cir.1997); *Burgess v. Unum Life Ins. Co.,* 1995 WL 581151, at *3, n. 3 (N.D.Cal. Sept.25, 1995) (citing Prop. Treas.Reg., 52 Fed.Reg. 22716, Q & A 7 (1987)) ("[l]ong-term disability coverage is explicitly exempted from COBRA, since it is not considered a 'medical benefit' as defined by COBRA."); *Jefferson v. Reliance Standard Life Ins. Co.,* 818 F.Supp. 1523, 1524–1525 (M.D.Fla.1993), *rev'd on other grounds,* 85 F.3d 642 (11th Cir.1996) (unpublished table decision). Since COBRA does not attach to LTD benefits,[2] Coach's motion for summary judgment on Lauder's fourth claim is granted.

*6. COBRA Claim Against First Unum*

For the reasons stated above, First Unum's motion for dismissal of Lauder's second claim is granted.

---

**2.** Because the Court has granted summary judgment to Coach on the basis of the coverage of the COBRA statute, the Court need not address Coach's claim that notice was provided timely.

## CONCLUSION

The Clerk of the Court is directed to enter summary judgment in favor of defendant Coach for claims three and four of the amended complaint, and to dismiss claim two against First Unum. The plaintiff's motion for summary judgment on claims one and three is denied. The plaintiff's motion for attorneys' fees is denied without prejudice. All parties are directed to file trial papers by July 14, 1999 and to appear for a final pre-trial conference on July 16, 1999 at 3:00 p.m.

**SO ORDERED.**