**Robert KOSS et al., Plaintiffs,**

v.

**The WACKENHUT CORP.
et al., Defendants.**

**No. 03 Civ. 7679.**

United States District Court,
S.D. New York.

March 25, 2010.

William David Frumkin, Sapir & Frumkin, White Plains, NY, for Plaintiffs.

Adin C. Goldberg, Kent Y. Hirozawa, Gladstein Reif and Meginniss, New York, NY, Scott A. Brooks, Gregory, Moore, Jeakle, Heinen, Ellison & Brooks, P.C., Detroit, MI, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Robert Koss brings this class action on behalf of himself and all others similarly situated (the "Plaintiffs") against his former employer, The Wackenhut Corporation ("Wackenhut"), as well as the International Union of Security, Police, and Fire Professionals of America, and its formally affiliated labor organization, Local 151 (collectively, "SPFPA", and together with Wackenhut, "Defendants"). A subclass of Plaintiffs, the union-represented nonsupervisory employees (the "Nonsupervisory Employees"), allege that Defendants breached § 301 of the Labor Management Relations Act, 29 U.S.C. 185(a) (" § 301"). The other subclass of Plaintiffs, the supervisory employees without union representation (the "Supervisory Employees"), bring claims against Wackenhut for breach of contract and violation of New York Labor Law, § 190 et seq. Both the Supervisory Employees and the Nonsupervisory Employees assert a cause of action against Wackenhut pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B) ("ERISA").

The Supervisory Employees now bring a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") asserting that they are entitled to judgment as a matter of law for the breach of contract and New York Labor Law claims. Defendants cross-move for summary judgment with respect to all of Plaintiffs' claims.[1] For the reasons set forth below, SPFPA's motion is GRANTED, Wackenhut's motion is GRANTED, and Plaintiffs' motion is DENIED.

## I. BACKGROUND [2]

### A. FACTS

For many years, Wackenhut contracted with Consolidated Edison, Inc. ("ConEd") to provide security services at the Indian Point II Nuclear Power Plant in Buchanan, New York ("IP2"). Some time around 2001, Entergy, Inc. ("Entergy") bought IP2 from ConEd. At the time of the purchase, it was unknown whether Entergy would renew Wackenhut's contract—due to expire in March 2003—or, as it had done in the neighboring Indian Point III Nuclear Power Plant ("IP3"), let the contract expire and employ its own security employees.

In 2002, the Nonsupervisory Employees' collective bargaining agreement (the "CBA") was also expiring, and Wackenhut and SPFPA began negotiations for a new agreement. To address the possible job-security implications of IP2's sale to En-

---

1. The parties submitted and argued the merits of their motions before this Court at a hearing held on February 24, 2010 (the "February 24 Hearing"). Prior to the February 24 Hearing, each party submitted a letter brief in support of its motion. (*See* Wackenhut's Letter, dated February 17, 2010; SPFPA's Letter, dated February 17, 2010; Plaintiffs' Letter, dated February 17, 2010.) At the hearing, the parties developed the facts on record by submitting documentary evidence and presenting live witness testimony. (*See* February 24 Hearing Transcript ("Tr.").) Following the hearing, the Court allowed the parties to submit additional evidence for consideration. (*See* Plaintiffs' Exhibits 7 Through 23 in Support of its Motion for Summary Judgment and

in Opposition to Defendants' Motion for Summary Judgment, dated March 5, 2010 ("Plaintiffs' Supplemental Evidence"); Defendant The Wackenhut Corporation's Supplemental Exhibits in Support of its Motion for Summary Judgment, dated March 12, 2010 ("Wackenhut's Supplemental Evidence").)

2. The facts below are taken from the evidence and testimony produced at the February 24 Hearing, as well as Plaintiffs' Supplemental Evidence and Wackenhut's Supplemental Evidence. Unless otherwise noted, all facts described here are undisputed. Except where specifically quoted, no further citation to these sources will be made.

tergy, Wackenhut proposed that the CBA include a bonus provision (the "Stay Bonus") that would provide: "Employees on the payroll as of ratification of this Agreement (July 11, 2002) who continue in employment at [IP2], but whose position is eliminated during the integration process and therefore their employment is terminated, will receive a check before taxes in the amount of four thousand dollars ($4,000)." (Plaintiffs' Exhibit ("Pls.' Ex.") 1.) SPFPA accepted Wackenhut's proposal without change and the Nonsupervisory Employees voted to approve the CBA on July 11, 2002.

In a letter dated July 24, 2002, and addressed to Jim Mills, Director of Nuclear Operations at Wackenhut ("Mills"), a representative of the Supervisory Employees inquired whether the Supervisory Employees would be entitled to the Stay Bonus. By memorandum dated July 26, 2002 (the "Mills Memo"), Mills responded, stating that "[a]ll [Wackenhut] employees are eligible for this bonus, including supervisors." (Pls.' Ex. 4.) Mills's response conformed to Wackenhut's practice of providing the Supervisory Employees with the same raises and benefits negotiated by the Nonsupervisory Employees.

In late January 2003, Entergy informed Wackenhut that it would not renew the security contract, and that March 29, 2003 would be Wackenhut's last day of providing services at IP2. Entergy advised Wackenhut employees that Entergy would be hiring security employees directly, not through a subcontractor, and that the Wackenhut employees should apply for those new security positions. Many Wackenhut employees, both Supervisory and Nonsupervisory, did apply, and Defendants and Plaintiffs agree that all who applied were offered employment with Entergy. Those who accepted Entergy's offer continued to work at IP2 or IP3 after Wackenhut ceased providing services on March 29, 2003.

Because all IP2 security workers who applied at Entergy received a position and began working immediately without having suffered any interruption, Wackenhut refused to pay the Stay Bonus to any employee—either Supervisory or Nonsupervisory. The Nonsupervisory Employees filed grievances under the CBA, alleging that they should have received the Stay Bonus because Wackenhut no longer employed them after March 29, 2003. Wackenhut and the SPFPA proceeded to arbitration, but SPFPA withdrew its grievances after opening arguments.

## B. *PROCEDURAL HISTORY*

Plaintiffs originally filed this action on September 29, 2003. Plaintiffs then filed an amended complaint on June 22, 2004, and a second amended complaint on March 16, 2005. By Order dated March 30, 2009, 2009 WL 928087, Judge Stephen C. Robinson granted Plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure, but identified the need for Supervisory and Nonsupervisory Employee subclasses. Plaintiffs' case was subsequently reassigned to this Court, which will now address the merits of the parties' cross—motions for summary judgment.

## II. *LEGAL STANDARD*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of

fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986).

The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223 (2d Cir.1994). When deciding cross-motions for summary judgment, the standard to be applied "is the same as that for individual summary judgment motions and a court must consider each motion independent of the other." *Schultz v. Stoner,* 308 F.Supp.2d 289, 298 (S.D.N.Y.2004) (quotation marks omitted).

## III. *DISCUSSION*

### A. *SECTION 301/FAIR REPRESENTATION CLAIM*

■ The Nonsupervisory Employees make a "hybrid" § 301/fair representation claim, which "as a formal matter, comprises two causes of action": (1) a claim against SPFPA for breach of the duty of fair representation; and (2) a claim against Wackenhut for breach of the CBA. *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 163–64, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). "To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *Id.* at 165, 103 S.Ct. 2281 (alterations in original) (quotation marks omitted). Defendants move for summary judgment on the claim, arguing that the Nonsupervisory Employees fail, as a matter of law, to establish that Wackenhut acted contrary to the CBA. The Court

agrees, and grants Defendants' motion as to the hybrid § 301 claim.

#### 1. *Breach of the Collective Bargaining Agreement*

According to Wackenhut, the unambiguous terms of the CBA provide that Nonsupervisory Employees should be entitled to the Stay Bonus only if they applied for, and did not receive, a position at Entergy. The Nonsupervisory Employees oppose Wackenhut's motion, arguing that the plain language of the CBA requires that Wackenhut pay the Stay Bonus to all Nonsupervisory Employees who remained with Wackenhut until Wackenhut's contract expired—regardless of whether or not they began working for Entergy. In the alternative, the Nonsupervisory Employees argue that the language of the Stay Bonus provision is ambiguous, and that extrinsic evidence does not support Wackenhut's reading of the language. The Court finds that the contract language is unambiguous and that the Nonsupervisory Employees performed according to its terms, but that the nonoccurrence of express conditions excused Wackenhut's performance.

■ In a contract dispute, a court may grant summary judgment if "the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning." *Topps Co. v. Cadbury Stani S.A.I.C.,* 526 F.3d 63, 68 (2d Cir.2008). "Contract terms are ambiguous if they are capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1192 (2d Cir.1996) (quotation marks omitted). "To

the extent the moving party's case hinges on ambiguous contract language, summary judgment may be granted only if ... there is no extrinsic evidence that would support a resolution of the ambiguities in favor of the nonmoving party's case." *Topps,* 526 F.3d at 68.

Although the parties themselves dispute the meaning of the contract, the Court finds the language here to be wholly unambiguous and thus appropriate for resolution at the summary judgment stage. *See Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir.1989) ("Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation."). The CBA provides that "Employees on the payroll as of ratification of this Agreement (July 11, 2002), who continue in employment at [IP2], but whose position is eliminated during the integration process and therefore their employment is terminated, will receive a check before taxes in the amount of four thousand dollars ($4,000)." (Pls.' Ex. 2.) The Court is persuaded that the CBA clearly and unambiguously entitles a Nonsupervisory Employee to the bonus if (1) his position no longer exists at the completion of the integration process, and (2) as a result, he is left without employment. In other words, the CBA provides bonuses only to those employees whose jobs are casualties of the integration process, not to those who voluntarily obtain other employment prior to the completion of the transition.

The Nonsupervisory Employees argue that Wackenhut breached the CBA by failing to distribute the Stay Bonus according to those terms. The Court disagrees. The CBA expressly conditions payment of the Stay Bonus on: (1) the elimination of the Nonsupervisory Employee's position and (2) the termination of the Nonsupervisory Employee's employment. Although the Nonsupervisory Employees performed as required by continuing to work at IP2, the Court finds that the undisputed facts establish that the two conditions precedent did not occur.

Wackenhut argues that the day after Wackenhut left IP2, the employees "just continued to report to the same place, reporting to the same supervisor in the same location doing the same work, the only thing that had changed was who was on the paycheck—instead of Wackenhut it was Entergy." (Tr. at 44:4–8.) According to the Nonsupervisory Employees, however, even if they had the exact same job, pay, and benefits at Entergy as they did at Wackenhut, their positions were "eliminated" and their employment was "terminated" within the meaning of the CBA. The Court finds this interpretation unpersuasive.

As discussed above, the contract language is unambiguous; the terms "terminated" and "eliminated" must be read within the context of the Stay Bonus provision, which specifically references the larger framework of the Entergy integration process. *See McGraw–Hill Cos. v. Vanguard Index Trust,* 139 F.Supp.2d 544, 552 (S.D.N.Y.2001) ("[I]t is a cardinal rule of contract interpretation that a court must construe the terms of an agreement as a whole ...." (quotation marks omitted)). Within the context of integration, the Court finds that those who remained employed in substantially similar positions were not "terminated," nor were their positions "eliminated," within the meaning of the Stay Bonus provision.

There are only two groups of employees who lost their jobs after the transition period: (1) those who did not apply to work for Entergy, and (2) those who applied, but did not accept the position that was offered to them. Plaintiffs do not dispute that every employee who wanted a

security job at IP2 or IP3 received one. Therefore, even if the Nonsupervisory Employees were able to establish that variations in pay and benefits amounted to the elimination of an employee's position, the evidence shows that no Nonsupervisory Employees were ultimately terminated. Accordingly, the Court finds that Wackenhut did not breach the CBA and grants its motion for summary judgment as to the § 301/fair representation claim.

### 2. *Breach of the Duty of Fair Representation*

SPFPA moves for summary judgment with respect to the Nonsupervisory Employees' § 301/fair representation claim. As stated above, in order to prevail on this claim, Plaintiffs must "not only show that [the employer's actions were] contrary to the contract, but must also carry the burden of demonstrating breach of duty by the Union." *DelCostello*, 462 U.S. at 165, 103 S.Ct. 2281. Because the Court has determined that, as a matter of law, Wackenhut did not breach the CBA, the Nonsupervisory Employees cannot prevail in their claim for breach of the duty of fair representation against the Union. Accordingly, the Court grants SPFPA's motion for summary judgment.

### B. *SUPERVISORY EMPLOYEES' BREACH OF CONTRACT CLAIM*

The Supervisory Employees claim that Wackenhut did not fulfill its contractual obligation to pay the Stay Bonus to those Supervisory Employees who continued in their employment with Wackenhut until Wackenhut ceased providing services at IP2 in March 2003. Wackenhut cross-moves for summary judgment on this claim, arguing that the Supervisory Employees had to apply for and be denied employment with Entergy to be eligible for the Stay Bonus. The same reasons that support the Court's granting Wackenhut's motion as to the Nonsupervisory Em-

ployees' § 301 claim, warrant granting Wackenhut's motion for summary judgment as to the Supervisory Employees' breach of contract claim.

As the Court identified at the February 24 Hearing, the Supervisory Employees' breach of contract argument is logically inconsistent. They move for summary judgment based on an unambiguous contract, but cannot identify the document that constitutes this purported unambiguous contract. When pressed at the hearing, Plaintiffs' stated that the Court should consider the CBA Stay Bonus provision as the unambiguous contract between the Supervisory Employees and Wackenhut. (*See* Tr. at 174:4–7 ("I believe ... that it was the stay bonus agreement that was annexed to the [CBA], which I think is Plaintiffs' Exhibit 2.").)

The other possibility, put forth by Wackenhut, is that the Court should look to the Mills Memo as the contract between the Supervisory Employees and Wackenhut. (*See* Tr. at 47:2–7 ("The only document that really forms the basis of [the Supervisory Employees'] claim is not the [CBA], not [Plaintiffs'] Exhibit 1 or [Plaintiffs'] Exhibit 2[,] because those are agreements that apply only between the union and the company ... it is the [Mills Memo].").) The Mills Memo, however, is hardly unambiguous. The Mills Memo states that all "employees are eligible for this bonus, including supervisors," but it omits the specific details of eligibility. (Pls.' Ex. 4.) Thus, to determine the meaning of "this bonus," the Court would need to refer to extrinsic evidence—namely, Wackenhut's history of giving the same benefits to Nonsupervisory and Supervisory Employees, and the terms of the Stay Bonus as contained in CBA—to interpret the meaning of the contract.

■ Wackenhut is entitled to summary judgment in either circumstance. First, as

Wackenhut identifies, the Supervisory Employees are not a party to the CBA and cannot enforce its terms against Wackenhut. Second, even if external evidence establishes that the Mills Memo constituted an offer to the Supervisory Employees to contract on terms identical to the CBA, the CBA, as described above, contains two express conditions that went unfulfilled. (*See* Tr. at 47:17–19 (Wackenhut: "It is undisputed that the terms and conditions for the [Supervisory Employees] were the same as the terms and conditions for the [Nonsupervisory Employees] . . . ."); Tr. at 175:5–9 (Plaintiffs: "I think it may have been stated previously that there was a practice at [IP2] that the [Supervisory Employees] received the same bonuses and increases that were received by the [Nonsupervisory Employees].").) All employees who sought a position with Entergy, whether Supervisory or Nonsupervisory, received a position after Wackenhut ceased operations. Therefore, as in the context of Plaintiffs' § 301 claim, Wackenhut is excused from performance by the nonoccurrence of two express conditions.

Accordingly, the Court denies the Supervisory Employees' motion for summary judgment and grants Wackenhut's motion.

### C. *NEW YORK LABOR LAW*

■ The Supervisory Employees also move for summary judgment on their claim that Wackenhut violated New York Labor Law § 193(1)(a). Wackenhut cross-moves for summary judgment on this claim, arguing that the Supervisory Employees were ineligible for the Stay Bonus. The Court finds that any right to the Stay Bonus that the Supervisory Employees may have had never vested. Accordingly, the Court grants Wackenhut's motion and denies the Supervisory Employees' motion.

■ New York Labor Law § 193(1)(a) provides that, "[n]o employer shall make any deduction from the wages of an employee, except deductions which: (a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency . . . ." N.Y. Lab. Law § 193(1)(a). Wages are defined as "the earnings of an employee for labor or services rendered, regardless or whether the amount of earnings is determined on a time, piece, commission, or other basis." *Id.* § 190(1). "Typically, the term wages does not include bonus, profit-sharing, and other forms of incentive compensation unless the incentive compensation is already 'earned' by the employee." *Aledia v. HSH Nordbank AG*, No. 08 Civ. 4342, 2009 WL 855951, at *2 (S.D.N.Y. Mar. 25, 2009) (*citing Truelove v. Northeast Capital & Advisory, Inc.*, 95 N.Y.2d 220, 715 N.Y.S.2d 366, 738 N.E.2d 770, 772–73 (2000)). A bonus is " 'earned' when the employee acquires a vested interest in the award and its payment is not conditioned upon some occurrence or left to the discretion of the employer." *Id.* at *3.

Here, the Supervisory Employees did not "earn" their bonus. As discussed above, payment of the Stay Bonus was conditioned upon the employees applying for, and being denied, a position at Entergy. Given that these conditions were not fulfilled, the Court finds that the Supervisory Employees were not entitled to the bonus. Accordingly, the Court denies Plaintiffs' claim and grants Wackenhut's motion for summary judgment as to the New York Labor Law claim.

### D. *ERISA*

■ In the alternative to the claims discussed above, Plaintiffs argue that Wackenhut's failure to pay the Stay Bonus constitutes a violation of ERISA, 29 U.S.C. 1132(a)(1)(B). Wackenhut moves for summary judgment on the basis that the Stay Bonus provision is not an employee benefit

plan within the meaning of ERISA. The Court agrees.

■ "A finding that a particular program is a 'plan' under ERISA depends in part upon whether the program 'requires an ongoing administrative program to meet the employer's obligation.'" *Kosakow v. New Rochelle Radiology Assocs.,* 274 F.3d 706, 736 (2d Cir.2001) (*quoting Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 11, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)). In determining whether "an ongoing administrative program" exists, a court considers (1) "whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits"; (2) "whether the employer's undertaking or obligation requires managerial discretion in its administration"; and (3) "whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria." *Schonholz v. Long Island Jewish Med. Ctr.,* 87 F.3d 72, 76 (2d Cir.1996) (quotation marks omitted).

Plaintiffs fail to present sufficient evidence to establish that the Stay Bonus—a one-time payment of $4,000 to certain specified employees—could be "characterized as the type of complex administrative scheme that ERISA was designed to regulate." *Kawski v. Johnson & Johnson,* 347 Fed.Appx. 610, 612 (2d Cir.2009). Plaintiffs argue that Wackenhut needed to determine eligibility for the payment on a case by case basis that in some instances may have extended past March 29, 2003. However, simple eligibility determinations and a limited period of administration are not sufficient to establish that the Stay Bonus amounted to a benefit plan. *See Schonholz,* 87 F.3d at 76 (finding a benefit plan, but distinguishing severance plans "limited either to a single payment or to a short span of time upon a plant or office closing"). Given that the payment of the Stay Bonus required only that Wackenhut determine, at the time it ceased operating at IP2 or shortly thereafter, whether the employee received a job at Entergy, the Court finds that the Stay Bonus does not qualify as an employee benefit plan under ERISA. Accordingly, the Court grants Wackenhut's motion for summary judgment.

## IV.  *ORDER*

**ORDERED** that the motion for summary judgment (Docket No. 136) of plaintiff Robert Koss on behalf of himself and all others similarly situated is DENIED; it is further

**ORDERED** that the motion for summary judgment (Docket No. 134) of defendant The Wackenhut Corporation is GRANTED; and it is finally

**ORDERED** that the motion for summary judgment (Docket No. 135) of defendants International Union of Security, Police, and Fire Professionals of America, and its formally affiliated labor organization, Local 151, is GRANTED.

The Clerk of the Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**